*394 OPINION OF THE COURT
Meyer, J.
The comparison of inventory records kept on a unit basis with a physical count of items on hand is not an “inventory computation” within the meaning of the exclusion in section 2(b) of a comprehensive dishonesty, disappearance and destruction policy of insurance. Moreover, because section 4 of the policy requires only evidence which “reasonably proves” employee dishonesty, the insurer is not entitled to summary judgment in an action on the policy if the insured presents some independent evidence from which employee dishonesty can be reasonably inferred, even though that evidence is less than would be required to make out a prima facie case were the preponderance of evidence standard applicable. There should, therefore, be an affirmance.
I
Plaintiff sues on the comprehensive dishonesty policy issued to it by defendant to recover the value of 116 reels of wire and cable determined to be missing when its June, 1979 physical inventory was taken. On plaintiff’s motion for summary judgment and defendant’s cross motion for like relief, the papers present evidentiary proof from which could be found the facts which follow.
Plaintiff manufactures and sells wire and cable products. It maintains a sales office in Woodside, New York, and, through a wholly owned subsidiary, a warehouse on Staten Island where wire and cable not needed in day-to-day sales activity is stored. The warehouse is used exclusively for storage of plaintiff’s property and is under the control of a manager, under whose supervision warehouse employees remove wire or cable from the warehouse for delivery either to the Woodside office or to a customer of plaintiff. The warehouse is protected by an alarm system installed and monitored by Honeywell, Inc.
Plaintiff’s secretary, Louis Deutsch, maintains the stock records of all wire and cable stored in the warehouse and has done so for the past 30 years. Upon receipt of wire or cable, entries are made on stock record cards showing the total received, the manufacturer or supplier and the date of delivery; each reel is separately listed with a notation of *395 the exact footage on the reel; and on many items a specific control number is assigned to the reel. A physical stock inspection of the warehouse is conducted by Mr. Deutsch in June of each year. On the physical inspection made by Mr. Deutsch on June 30, 1979, he found that 116 reels of wire and cable which had been in the warehouse at the time of the June 30,1978 inspection were missing. He had personally reviewed each reel in the warehouse in June, 1978 and verified that the reels shown on his stock record were then present.
No reel is removed from the warehouse without Mr. Deutsch’s authority and when a reel is removed it is deleted from the stock record card. During the period between June 30, 1978 and June 30, 1979, none of the missing reels had been sold nor was removal of any of them authorized by Deutsch or any other officer of plaintiff, nor was there any break-in or burglary of the warehouse during that time.
The missing reels were all acquired by plaintiff prior to 1976. The majority of them were at least four feet in diameter and weighed over 5,000 pounds each and could be moved only with a high-lo machine by a person experienced in doing so. Many were stored by stacking one on top of another. All of the missing reels were either items for which there was little demand or of which substantial quantities were maintained. Selection of reels in those two categories for removal required knowledge as to which items were slow moving and which were stored in quantity and of the warehouse location of each, knowledge which was limited to employees of the warehouse. On an afternoon in late December, 1978, the warehouse manager quit his job without explanation and without notice.
Defendant’s policy, by insuring agreement I, insures plaintiff and its warehouse subsidiary against “any fraudulent or dishonest act or acts committed by any of the Employees acting alone or in collusion with others.” By section 2(b) of the policy conditions, it excludes from that coverage “loss, or * * * that part of any loss, as the case may be, the proof of which, either as to its factual existence or as to its amount, is dependent upon an inventory computation or a profit and loss computation”, but section 4 of the *396 conditions provides that “If a loss is alleged to have been caused by the fraud or dishonesty of any one or more of the Employees and the insured shall be unable to designate the specific Employee or Employees causing such loss, the Insured shall nevertheless have the benefit of Insuring Agreement I, subject to the provisions of Section 2(b) of this Policy, provided that the evidence submitted reasonably proves that the loss was in fact due to the fraud or dishonesty of one or more of the said Employees”.
Special Term concluded that stock records comparison and inventory computation were indistinguishable and that the circumstantial proof presented was insufficient, apart from the inventory computation, to establish that the loss was due to employee dishonesty and, therefore, denied plaintiff’s motion and granted defendant’s cross motion, dismissing the complaint. The Appellate Division, finding the loss sufficiently established by such personal observation and knowledge as was detailed by Deutsch rather than by inventory computation, modified by denying defendant’s cross motion and, as so modified, affirmed. On defendant’s appeal we conclude that the claim is not barred by the inventory computation provision of section 2(b) and that plaintiff has sufficiently met the “reasonably proves” standard of section 4 to withstand a summary judgment motion.
II
The standard exclusion contained in section 2(b) has been through a number of formulations. Originally the standard policy required conclusive proof that an inventory shortage was caused by employee fraud or dishonesty.[1] After that provision was interpreted to require only proof by a preponderance of the evidence,[2] the standard policy *397 was revised to omit reference to proof from the insuring agreement but to state as section 2 an exclusion in essentially the same language as section 2(b) set forth above, with an added “provided” clause.* *[3] The “conclusively establishes” language of former section 3 was dropped and the remainder of former section 3, modified to make clear that it was “subject to the provisions of Section 2(b) of this Policy” and to use the words “reasonably proves” in place of “reasonably establishes,” became the present section 4.
The courts split over whether section 2 in that form was ambiguous[4] and over the meaning of “inventory computation”. The “provided” clause of section 2 having played a part in some of the ambiguity holdings, that clause was dropped from section 2 sometime prior to 1976,[5] in an apparent effort to remove the ambiguity. In our view the policy draftsmen still have not found Ariadne’s thread.
The problem is in the words “inventory computation” as used in section 2(b). Defendant would read that phrase to cover any loss the proof of which requires reference to inventory records. Such a reading, however, ignores the fact that the word “computation” carries more than one connotation. Thus, it may mean “the result of computation: amount computed” (Webster’s Third New International Dictionary, p 468). It may, however, also mean “the act or action of computing: calculation, reckoning” or “a way or system of reckoning” (id.) or “The act of computing, numbering, reckoning, or estimating” (Black’s Law Dictionary [5th ed], p 261). Thus, it involves concepts of both mathematical exactness and of probability or estimation.
To construe it in the first sense would be to make it all but impossible for an insured to recover under the policy for, except in situations in which an employee is caught in *398 the act with the stolen goods in his possession, it will always be necessary in order to prove the amount of a loss to ascertain the number of units involved through an inventory count. To construe it in that fashion is also inconsistent with section 6 of the policy, which requires the insured to “keep records of all insured property in such manner that the Company can accurately determine therefrom the amount of loss” (see Tri-Motors Sales v Travelers Ind. Co., 19 Wis 2d 99, 106).
The tests to be applied in construing an insurance policy are common speech (Lewis v Ocean Ace. & Guar. Corp., 224 NY 18, 21) and the reasonable expectation and purpose of the ordinary businessman (Bird v St. Paul Fire & Mar. Ins. Co., 224 NY 47, 51). The ambiguities in an insurance policy are, moreover, to be construed against the insurer, particularly when found in an exclusionary clause (see Breed v Insurance Co., 46 NY2d 351, 353). We conclude, therefore, that section 2(b) should be read to exclude only losses the proof of which, as to factual existence or amount, turns upon probabilities deduced or estimations made from comparison of posttheft-discovery dollar, as distinct from unit, inventory amounts with a prediscovery dollar amount, or of a posttheft unit number with a pretheft number calculated from a pretheft dollar inventory amount, but not to exclude a loss which can be established by showing that a particular item or unit of goods observed and identified as present at one physical inventory count is not present at the next.
To conclude otherwise would produce absurd results. Thus, an insured, able to meet the reasonable proof requirement of section 4 (as, for example, by eyewitness testimony of a person who could identify as an employee of the insured one of a group he observed loading merchandise on a truck in the middle of the night and his own testimony that the employee had not been authorized to do so and had not since the taking returned to work), could not recover because he could not use pre and posttaking unit inventory records to establish what had been taken and in what quantity.
We hold that the phrase “inventory computation” is to be construed to proscribe proof of the fact or amount of loss *399 through a generalized estimate, calculated, for example, from sales records and average markup, of what the dollar value of inventory on hand should be. It does not, however, preclude proof of the fact or amount of loss through inventory records (whether perpetual or periodically made) detailing the actual physical count of individually identifiable units such as are described in the Deutsch affidavits. That conclusion finds support in Popeo v Liberty Mut. Ins. Co. (369 Mass 781, 785 [“Where the missing items are identified from such records (unit-type or perpetual inventory records), it has been held that there is no ‘inventory computation’ within the meaning of the inventory exclusion clause”]); Paramount Paper Prods. Co. v Aetna Cas. & Sur. Co. (182 Neb 828, 839 [“the exclusionary clause does not bar an inventory made upon a unit basis, but does bar inventories which require computation to reduce them to some other basis, or, where when one inventory is compared with a later one, it is necessary to compute and allow for sales and purchases made in the interim”]); and Sun Ins. Co. v Cullum’s Men Shop (331 F2d 988, 991 [“proof of the amount of the loss did not depend upon an inventory computation * * * but on the contrary consisted of an enumeration of each missing item, suit by suit, based upon a check of the stock record, the swatch book, against the stock actually on hand”]); see, also, Hoboken Camera Center v Hartford Acc. & Ind. Co. (93 NJ Super 484, 496); Stadham Co. v Century Ind. Co. (167 Pa Super Ct 268, 273-274); Atlanta Coca-Cola Bottling Co. v Transamerica Ins. Co. (61 FRD 120,124-125); Kurland, Claims For Inventory Shortage Resulting From Employee Dishonesty Under Fidelity Insurance Bonds — A Present Appraisal (33 Ins Counsel J 397); Bunge, Inventory Shortages (20 Ins Counsel J 271); Bunge, Inventory Shortages (11 Ins Counsel J [No. 2] 32). Though there are contrary decisions of other State and Federal courts, in our opinion the cases cited state the better rule. Moreover, it is not inconsistent with the holdings in Teviro Casuals v American Home Assur. Co. (54 NY2d 915) and American Thermostat Corp. v Aetna Cas. & Sur. Co. (59 AD2d 965, mot for lv to app den 43 NY2d 647), on which the carrier relies, both of which turned on the failure of the insured to present sufficient *400 proof that the loss claimed was due to employee dishonesty and did not take a clear position on the meaning of inventory computation.[6]
Ill
To defeat defendant’s motion for summary judgment, plaintiff must come forward with evidentiary proof “sufficient to require a trial of any issue of fact” (CPLR 3212, subd [b]). Of importance in that connection, however, is the fact that section 4 of the policy requires only that plaintiff’s “evidence * * * reasonably proves that the loss was in fact due to the fraud or dishonesty of one or more” of its employees. That “requires more than ‘some independent evidence’ but less than a prima facie case as a condition to the use of inventory” records of the type above referred to (Dunlop Tire & Rubber Corp. v Fidelity & Deposit Co., 479 F2d 1243, 1246; United States Smelting Refining & Min. Co. v Aetna Cas. & Sur. Co., 372 F Supp 489, 494; Popeo v Liberty Mut. Ins. Co., 369 Mass 781, 786, supra; Travelers Ind. Co. v Davis Wholesale Drug Co., 234 So 2d 604, 605 [Miss]; National Shirt & Hat Shops v American Motorists Ins. Co., 234 NC 698, 707).
The Deutsch affidavits clearly meet that test, even if the abrupt departure of the warehouse manager be disregarded. They establish that only plaintiff’s property was stored in the warehouse, that only plaintiff’s employees had access to the warehouse, that it was protected by a security service when plaintiff’s employees were not present, that during the period between the 1978 and 1979 inventories there had been no break-in or burglary, that nothing was permitted to be removed from the warehouse without Mr. Deutsch’s authorization and that a record is made of what is removed, that a total of 116 reels were missing, most of which were over four feet in diameter, weighed in excess of two tons and required a fork lift to move (and inferentially a truck to cart away), and that the missing reels were of two categories the absence of which would not be likely to be detected until a physical inven *401 tory was taken, knowledge available only to warehouse employees.
It is a reasonable inference from those facts that plaintiff’s loss was due to the dishonesty of one or more of its employees (see Wolf v Aetna Acc. & Liab. Co., 183 App Div 409, affd 228 NY 524; Aronow Bros. v United States Cas. Co., 35 NYS2d 75, affd 265 App Div 992, mot for lv to app den 265 App Div 1052). Whether a jury will so conclude or, indeed, whether the evidence as presented at trial will sufficiently match that detailed in the affidavits to present a jury question are matters to be determined upon trial. We decide only that the evidentiary proof in the Deutsch affidavits is not barred by section 2(b) of the policy and measures up to the reasonable proof standard of its section 4 and that, therefore, defendant was not entitled to summary judgment.
For the foregoing reasons, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.

. The words “conclusively prove” appeared in the insuring agreement (Kurland, Claims For Inventory Shortage Resulting From Employee Dishonesty Under Fidelity Insurance Bonds — A Present Appraisal, 33 Ins Counsel J 397, 398) and in section 3, which provided that if the loss was “disclosed by an inventory computation” the insured could recover for only so much of the loss “as the evidence submitted conclusively establishes was in fact due” to employee dishonesty (Stadham Co. v Century Ind. Co., 167 Pa Super Ct 268, 272; see, also, Hoboken Camera Center v Hartford Acc. & Ind. Co., 93 NJ Super 484, 491, n 3).

. (Hoboken Camera Center v Hartford Acc. & Ind. Co., 93 NJ Super 484; National Shirt & Hat Shops v American Motorists Ins. Co., 234 NC 698; Stadham Co. v Century Ind. Co., 167 Pa Super Ct 268; Savannah Wholesale Co. v Continental Cas. Co., 279 F2d 706; see Bunge, Inventory Shortages, 20 Ins Counsel J 271, 276; Bunge, Inventory *397 Shortages, 11 Ins Counsel J [No. 2] 32, 38; Kurland, supra, n 1, 33 Ins Counsel J., at p 398.)

. That clause read: “provided, however, that this paragraph shall not apply to loss of Money * * * or other property which the Insured can prove, through evidence wholly apart from such computations, is sustained by the Insured through any fraudulent or dishonest act or acts committed by any one or more of the Employees”.

. The cases are collected in Dunlop Tire & Rubber Corp. v Fidelity & Deposit Co. (479 F2d 1243, 1246, n 5).

. Indorsement 200, which is part of plaintiff’s policy, deleted former section 2(b) from the policy and substituted the language quoted in the body of this opinion, page 395, supra.

. Kaplan Jewelers v Insurance Co. (86 Misc 2d 334) and Kernwood Mfg. Corp. v Home Ind. Co. (65 Misc 2d 354, affd 67 Misc 2d 888), to the extent that they reject the distinction here drawn between unit inventory and inventory computations based on estimation, are not to be followed.