Dido **KURTIN**, Plaintiff,

v.

**NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK),** Defendant.

**NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK),** Third–Party Plaintiff,

v.

**GEORGE CAMPBELL PAINTING CORP.,** Third–Party Defendant.

**GEORGE CAMPBELL PAINTING CORP.,** Fourth–Party Plaintiff,

v.

**LIBERTY MUTUAL INSURANCE COMPANY,** Fourth–Party Defendant.

**No. 93 Civ. 6863 (PKL).**

United States District Court, S.D. New York.

June 6, 1995.

Deegan & Scibilia, Hempstead, NY, for fourth-party plaintiff (Joseph R. Crafa, of counsel).

Dwyer & Duffy, P.C., New York City, for fourth-party defendant (Charles P. Duffy, of counsel).

## OPINION AND ORDER

LEISURE, District Judge:

This is an action brought by Dido Kurtin ("Kurtin") against the National Railroad Passenger Corporation ("Amtrak"), seeking recovery for injuries allegedly sustained as the result of a fall from the Hell's Gate Bridge (the "Bridge"). Amtrak brought a third-party action against George Campbell Painting Corporation ("Campbell" or "plaintiff"), Kurtin's employer, seeking common law and contractual indemnification. Campbell, in turn, brought a fourth-party action against Liberty Mutual Insurance Company [1] ("Liberty" or "defendant"), its insurance carrier. Plaintiff now moves this Court for an order declaring that Liberty is obligated to defend and indemnify Campbell with respect to the claims in the Kurtin action. Liberty opposes Campbell's motion and requests that the Court declare that Liberty is not obligated to defend, cover or indemnify Campbell for Kurtin's accident. For the reasons stated below, Campbell's motion is granted, and Liberty's request is denied.

## BACKGROUND

The facts necessary to a decision on the instant motion are uncomplicated, undisputed [2] and easily summarized. On August 26, 1993, Kurtin, a painter in the employ of Campbell, fell from the Bridge and sustained injuries. Liberty had previously issued a

---

**1.** Apparently incorrectly named, as it should have been sued as Liberty Mutual Fire Insurance Company. *See* Memorandum of Law in Support of Liberty Mutual Insurance Company's Position on Coverage ("Defendant Mem.") at 1.

**2.** The facts are undisputed by the parties to the instant motion for the purposes of the instant motion.

commercial general liability ("CGL") policy to Campbell. The CGL policy stated:

2. Exclusions

This insurance does not apply to:

e. "Bodily Injury" to:

(1) An employee of the insured arising out of and in the course of employment by the insured; . . .

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an *"insured contract."*

Duffy Affidavit, Ex. 1, Section I(2)(e) (emphasis added).

An "insured contract" does not include that part of any contract or agreement:

a. That indemnifies any person or organization for "bodily injury" or "property damage" arising out of *construction or demolition* operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

Duffy Affidavit, Ex. 1, Section V(6) (emphasis added).

## DISCUSSION

The parties agree that the question before this Court on the instant motion is, simply stated, whether the railroad exception that excludes indemnification for bodily injury arising out of construction or demolition within fifty feet of any railroad property is applicable to Kurtin's accident.[3] In other words, the question before this Court is whether the work performed by Campbell for Amtrak constitutes construction or demolition.

3. Essentially, Kurtin's accident is covered if the agreement between Campbell and Amtrak is an "insured contract" within the meaning of the CGL policy. Liberty apparently concedes that the agreement is an insured contract if it is not excluded by the exclusionary language of Section

### A. Contract Interpretation

In the instant motion, the parties dispute the interpretation of a contract. In the context of determining the proper construction of a contract, summary judgment may be granted where the contractual language conveys a "definite and precise meaning absent any ambiguity." *Seiden Assoc., Inc. v. ANC Holdings, Inc.,* 959 F.2d 425, 428 (2d Cir. 1992); *see also Heyman v. Commerce and Indus. Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir.1975). However, when ambiguity exists and "the resolution of the ambiguity hinges on such extrinsic matters as the credibility of witnesses or documents or upon choosing one among several reasonable inferences that may be drawn from such extrinsic evidence, a jury, and not a court, should decide what meaning is to be ascribed to the contract." *Brass v. American Film Technologies,* 987 F.2d 142, 148 (2d Cir.1993); *see also Seiden Assoc.,* 959 F.2d at 428; *Record Club of America v. United Artists Records,* 890 F.2d 1264, 1271 (2d Cir.1989).

It is well settled that whether ambiguity exists in a contract is a threshold question of law to be resolved by the court. Contract language is unambiguous when it has "'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference in opinion.'" *Seiden Assoc.,* 959 F.2d at 428 (quoting *Hunt Ltd. v. Lifschultz Fast Freight,* 889 F.2d 1274, 1277 (2d Cir.1989)). Conversely, contractual language is considered ambiguous when it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Walk–In Medical Centers v. Breuer Capital Corp.,* 818 F.2d 260, 263 (2d Cir.1987); *see also Seiden Assoc.,* 959 F.2d at 428. Where the terms of the agreement,

V of the CGL policy. That language says that an "insured contract" does not include an agreement that indemnifies for bodily injury arising out of construction or demolition operations within fifty feet of railroad property and affecting a railroad bridge.

"giving due consideration to the surrounding circumstances [and] apparent purpose which the parties seek to accomplish" are not "wholly unambiguous," summary judgment is improper. *Morse/Diesel, Inc. v. Fidelity and Deposit Co.*, 1990 WL 74545, *3, 1990 U.S.Dist. LEXIS 6548, at *9 (S.D.N.Y.1990) (Leisure, J.) (citations omitted).

The Second Circuit, however, has observed that when the language of the contract is plain it "is not made ambiguous simply because the parties urge different interpretations." *Seiden Assoc.*, 959 F.2d at 428; *see also Wertheim Schroder & Co. v. Avon Products*, 1993 WL 126427, 1993 U.S.Dist. LEXIS 6184 (S.D.N.Y.1993) (Leisure J.). In addition, ambiguity is not created where one party's interpretation " 'strains the contract language beyond its reasonable and ordinary meaning.' " *Seiden Assoc.* 959 F.2d at 428 (quoting *Bethlehem Steel Co. v. Turner Constr. Co.*, 2 N.Y.2d 456, 459, 161 N.Y.S.2d 90, 141 N.E.2d 590 (1957)). Lastly, the Second Circuit has made clear that if a contract is unambiguous, its proper construction should be determined as a matter of law. *See United States Naval Inst. v. Charter Communications, Inc.*, 875 F.2d 1044, 1048 (2d Cir.1989).

**B.  *The Instant Motion can be Decided as a Matter of Law***

Campbell has not contended that any provision of the CGL policy is ambiguous. Rather it urges this Court to accept that the CGL policy unambiguously creates certain obligations. Liberty, in turn, argues that the CGL policy is clear and definite and that it articulates something entirely different. This Court finds that the CGL policy is, in fact, definite and precise, and consequently, the burden falls on this Court to construe the terms of the CGL policy. This case does not present the Court with an insurance policy containing provisions which conflict on their face, and as was observed above, a contract is not made ambiguous simply because the parties urge different interpretations. Accordingly, it is the duty of this Court, on the instant motion, to interpret the CGL policy.[4]

**C.  *The CGL Policy***

The exclusionary provision of the insurance policy is, by its plain language, limited to "construction or demolition operations." In the instant action, Campbell was hired by Amtrak to paint the viaduct of the Bridge.[5] Liberty argues that painting is within the meaning of "construction," while Campbell contends that it is not. Campbell observes that "[t]he tests to be applied in construing an insurance policy are common speech and the reasonable expectation and purpose of the ordinary businessman. The ambiguities in an insurance policy are, moreover, to be construed against the insurer, particularly when found in an exclusionary clause." *Ace Wire and Cable Co. v. Aetna Casualty & Surety Co.*, 60 N.Y.2d 390, 398, 469 N.Y.S.2d 655, 658, 457 N.E.2d 761, 764 (1983) (citations omitted).[6]

Campbell quotes *Websters' New Universal Unabridged Dictionary* as defining "construction" as:

1.  the act or process of building, or devising, forming; in fabrication; erection;

2.  the manner or method of building; the way in which a thing is made or put together; structure; organization; as a machine of intricate construction.

Campbell then argues that there is no reasonable interpretation of the word "construction" which includes painting.

"Construction work," as defined at 12 N.Y.C.R.R. 23–1.4(b)(13), is:

---

**4.**  "It is well-settled that the construction of certain provisions in an insurance policy which does not require an inquiry into the parties' intentions or the consideration of outside and conflicting evidence properly may be resolved by summary judgment." *Board of Education v. CNA Insurance Company*, 647 F.Supp. 1495, 1502 (S.D.N.Y.1986) (citations omitted).

**5.**  Kurtin was actually allegedly injured while acting in the capacity of a rigger preparatory to painting.

**6.**  "The meaning of language used in an insurance policy must be found in common speech of the average person, and in the reasonable expectation and purpose of the ordinary businessman engaged in the insured's line of business." *Board of Education*, 647 F.Supp. at 1503.

All work of the types performed in the construction, erection, alteration, repair, maintenance, *painting*, or moving of buildings or other structures ...

12 N.Y.C.R.R. 23–1.4(b)(13) (emphasis added).[7] Liberty naturally contends that it is this definition of "construction" that should be applied in the instant case. Using the above definition, painting clearly would be encompassed within "construction," and Campbell's activities would be excluded from coverage pursuant to the railroad exclusion provision.

Campbell responds that an exclusionary clause in an insurance policy must be strictly construed, but that since the purpose of the regulations promulgated by the Board of Standards and Appeals is to protect workers and other employees lawfully visiting construction sites, they are written broadly. Campbell argues that, unlike the laws applicable to the interpretation of exclusionary clauses in insurance policies, the provisions of New York State's labor law and the regulations of the Board of Standards and Appeals are broadly drafted and are to be liberally construed. *See Da Bolt v. Bethlehem Steel Corp.*, 92 A.D.2d 70, 74, 459 N.Y.S.2d 503, 506 (4th Dept.1983) ("the board's definition gives a liberal interpretation to the term "construction" so as to encompass both maintenance and repair work").

■■■ While it may be true that painting is an activity determined by the Legislature of the State of New York to be among those to be protected by the State's labor law and an activity encompassed within the Board of Standards and Appeals' definition of "construction work," that definition is deliberately broad to afford protection to workers. This liberal and expanded definition should not be utilized to extend the plain meaning of the terms set forth in an exclusionary clause in an insurance policy. The words used in an insurance contract should be given their normal meaning, absent a clear showing of contrary intention. *See H.S. Equities Inc. v. Hartford Accident and Indem. Co.*, 609 F.2d 669 (2d Cir.1979).

The definition of "construction work" established by the Board of Standards and Appeals includes a number of activities that would not be included in the ordinary and plain meaning of the term "construction." This Court must afford clear and unambiguous language its plain and ordinary meaning. *See Pennsylvania General Ins. Co. v. Kielon*, 112 A.D.2d 709, 492 N.Y.S.2d 502 (4th Dep't 1985). The instant insurance policy must be enforced as written. *See, e.g., Village of Sylvan Beach v. Travelers Indemnity Company*, 55 F.3d 114, 115 (2d Cir.1995); *National State Bank v. American Home Assurance Co.*, 492 F.Supp. 393, 396 (S.D.N.Y. 1980).

■■■ This Court is required to accord the exclusionary clause at issue a strict and narrow construction. In addition, the burden is upon the insurer to prove that the exclusion from liability coverage applies. *See Village of Sylvan Beach*, 55 F.3d at 116; *National Grange Mut. Ins. Co. v. Continental Cas. Ins. Co.*, 650 F.Supp. 1404, 1408 (S.D.N.Y.1986) (Weinfeld, J.). The Court notes that the insurance policy at issue fails to define the term "construction operations," and fails to refer to any such definition, either in 12 N.Y.C.R.R. 23–1.4(b)(13) or elsewhere. Had Liberty intended to exclude the painting and rigging activity performed by Campbell, it could have done so by specifically including the activity in the exclusionary clause or by simply excluding all operations within fifty feet of any railroad property. *See North Star Reinsurance Corporation v. Continental Ins. Company*, 185 A.D.2d 187, 585 N.Y.S.2d 436 (1st Dept.1992), *aff'd*, 82 N.Y.2d 281, 604 N.Y.S.2d 510, 624 N.E.2d 647 (1993) (a railroad exclusion of claims for bodily injuries arising out of operations within fifty feet of any railroad property). In the instant action, Liberty limited the railroad exclusion to demolition and construction operations within fifty feet of railroad property. The provision must be narrowly construed, and if ambiguous, must be construed against the drafter. *See Ace Wire*, 60 N.Y.2d at

---

**7.** In sub-section 7 of section 241 of Article 10 of the New York State Labor Law, the Legislature grants to the Board of Standards and Appeals the right and authority to issue rules and regulations. The Board issued Industrial Rule 23.

398, 469 N.Y.S.2d at 658, 457 N.E.2d at 764.[8] Consequently, this Court finds that painting was not encompassed within the definition of "construction" intended by the parties when they entered into the CGL policy.

The Court notes that there is some evidence that Campbell understood that the railroad exclusion applied to its operations. Specifically, Liberty contends that Campbell must have understood that the railroad exclusion applied because it separately purchased an additional insurance policy, the Railroad Protective Liability ("RPL") policy, also from Liberty.[9] Campbell maintains that it was merely conforming to its obligations to Amtrak.[10]

This Court finds, after affording due weight to the parties' understanding of their contract prior to the instant litigation, that Campbell's acquisition of the RPL policy is insufficient, standing alone, to demonstrate that the definition of "construction" in the exclusion clause of the CGL policy encompassed painting. The Court concludes that in light of the clear and plain meaning of "construction," Campbell's purchase of the separate RPL policy is inadequate to render indefinite the term "construction." The CGL policy is unambiguous, and painting was not encompassed within the parties' intended definition of "construction."

Accordingly, coverage of Kurtin's accident was not excluded by the CGL policy. The CGL policy is an "insured contract," and although the definition of "insured contract" is limited by the railroad exclusion, the CGL policy does not fit within the railroad exclusion.

## CONCLUSION

For the reasons stated above, this Court finds that Liberty's CGL policy issued to Campbell covered Kurtin's alleged accident on August 25, 1993, and therefore, Liberty is obligated, under that policy, to defend Campbell in the instant litigation; and is further obligated, under that policy, to indemnify Campbell by reason of any damages sustained from Kurtin's purported accident on August 25, 1993.

**SO ORDERED.**

---

**8.** Moreover, whenever an insurer wishes to exclude certain coverage from its policy obligations, it must do so in "clear and unmistakable" language. Any such exclusions or exceptions from policy coverage must be specific and clear in order to be enforced. They are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction. Indeed, before an insurance company is permitted to avoid policy coverage, it must satisfy the burden which it bears of establishing that the exclusions or exemptions apply in the particular case, and that they are subject to no other reasonable interpretation.
*Seaboard Surety Company v. Gillette Company,* 64 N.Y.2d 304, 311, 486 N.Y.S.2d 873, 876, 476 N.E.2d 272, 275 (1984) (citations omitted); *see also Village of Sylvan Beach,* 55 F.3d at 115; *National Grange,* 650 F.Supp. at 1408; *Board of Education,* 647 F.Supp. at 1502–3.

**9.** "The Parties' interpretation of the contract in practice, prior to litigation, is compelling evidence of the parties' intent." *Ocean Transp. Line, Inc. v. Am. Philippine Fiber Industries, Inc.,* 743 F.2d 85, 91 (2d Cir.1984); *see also Gurney Industries, Inc. v. St. Paul Fire and Marine Insurance Co.,* 467 F.2d 588, 594 (4th Cir.1972) ("the conduct of the parties is a valid indicium of their interpretation of the contract, and [ ] their construction of the agreement is one of the best indications of its meaning").

**10.** The insurance obligation portion of the contract between Amtrak and Campbell requires Campbell to acquire general liability insurance, and states that "if all railroad exclusions are deleted, contractor shall be relieved of the requirement to provide the railroad protective insurance described below ..." Campbell argues that it acquired the RPL policy because it was not relieved from so doing by the terms of its contract with Amtrak. All railroad exclusions were not deleted, contends Campbell, so the acquisition of separate coverage was necessary.