11-1342-cv
Keren Habinyon Hachudosh D'Rabeinu Yoel of Satmar BP v. Philadelphia Indemnity Insurance Company

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, in the City of New York, on the 16th day of February, two thousand twelve.

Present:
    ROBERT A. KATZMANN,
    SUSAN L. CARNEY,
            *Circuit Judges*,
    JANE A. RESTANI,
            *Judge*.[*]

_____

KEREN HABINYON HACHUDOSH D'RABEINU YOEL OF SATMAR BP,

    *Plaintiff-Appellant*,

            v.                                  No.  11-1342-cv

PHILADELPHIA INDEMNITY INSURANCE COMPANY,

    *Defendant-Appellee*.

_____

For Plaintiff-Appellant:          JACQUES X. CATAFAGO (David I. Aboulafia, Aboulafia Law Firm, LLC, New York, N.Y., *on the brief*), Catafago Law Firm, PC, New York, N.Y.

_____

[*] Judge Jane A. Restani, of the United States Court of International Trade, sitting by designation.

For Defendant-Appellee:     MICHAEL S. LEAVY, Gennet, Kallmann, Antin & Robinson, P.C., New York, N.Y.

Appeal from the United States District Court for the Eastern District of New York (Mauskopf, *J.*).

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court be and hereby is **AFFIRMED**.

Plaintiff-Appellant Keren Habinyon Hachudosh D'Rabeinu Yoel of Satmar BP ("Plaintiff") appeals from a March 10, 2011 decision of the United States District Court for the Eastern District of New York (Mauskopf, *J.*) denying Plaintiff's motion for summary judgment and granting the cross-motion for summary judgment filed by Defendant-Appellee Philadelphia Indemnity Insurance Company ("Defendant"). Defendant insured a building owned by the Plaintiff's parent company, located at 25 West Street in Staten Island (the "25 West Street Building"), which was vandalized on October 7, 2007 and damaged in the amount of $1,294,947.14. The district court held that although vandalism was a covered peril under the insurance policy, Defendant was not liable for the damage because, at the time of the incident, the building was "vacant" as defined in the policy and therefore excluded from coverage. On appeal, Plaintiff principally contends that the district court's interpretation of the policy was erroneous as a matter of law. We assume the parties' familiarity with the remaining facts and procedural history of the case.

"We review *de novo* a district court's grant of summary judgment, and we affirm only where we are able to conclude, after construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor, that 'there is no genuine

2

dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"

*Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)) (internal citation omitted). Under New York law, "insurance policies, like other contracts, are to be construed so as to give effect to the intent of the parties as expressed by their words and purposes." *Nat'l Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 103 (2d Cir. 2001) (internal quotation marks omitted); *see also Ace Wire & Cable Co. v. Aetna Cas. & Sur. Co.*, 60 N.Y.2d 390, 398 (1983) ("The tests to be applied in construing an insurance policy are common speech and the reasonable expectation and purpose of the ordinary businessman.") (internal citation omitted). Any ambiguities in an insurance policy are "construed against the insurer, particularly when found in an exclusionary clause." *Ace Wire & Cable Co.*, 60 N.Y.2d at 398. A contract is ambiguous where it "could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 914 (2d Cir. 2010) (internal quotation marks omitted). "However, if the words are clear and unambiguous, they must be accorded their plain and ordinary meaning and the policy enforced as written; a court is not free to modify such terms by judicial construction." *Francis v. INA Life Ins. Co.*, 809 F.2d 183, 185 (2d Cir. 1987). "We review *de novo* both whether a contract is ambiguous, and, when the district court finds a contract unambiguous, its interpretation of the contract." *Bank of N.Y.*, 607 F.3d at 914 (internal citation omitted).

In this case, the 25 West Street Building was added to the insurance policy in 2004 under the description "High School." App. 498. The policy included commercial property and general

3

liability insurance for eleven premises associated with the Plaintiff's "Specialty/Trade School." The policy provides that if the "building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage," Defendant will not be liable for any damage caused by vandalism. App. 80. The term "vacant" is defined, in relevant part, as follows:

> (b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:
>> (i) Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or
>> (ii) Used by the building owner to conduct customary operations.

App. 80. Thus, if the building owner does not use at least 31% of the total square footage of the building to conduct its "customary operations" within 60 days of the incident in question, Defendant is not liable for any damage or loss caused by an act of vandalism.

The district court concluded that this "policy exclusion is unambiguous and was clearly intended to apply to the customary operations of a school." *Keren Habinyon Hachudosh D'Rabeinu Yoel of Satmar BP v. Phila. Indem. Ins. Co.*, No. 08-CV-4726 (RRM)(JMA), 2011 U.S. Dist. LEXIS 25172, at *8-9 (E.D.N.Y. Mar. 10, 2011). Accordingly, because it is undisputed (1) that "the day-to-day, continuous training of students at the subject building had been temporarily suspended for more than sixty consecutive days prior to the loss," Pl.'s Br. 5; (2) that the location was used primarily for the storage of school supplies, furniture, and computers following the closure of the school in February 2006; and (3) that there had been no electricity or gas in the building since 2006, the district court concluded that Defendant was not liable for the damage at issue.

We agree. Although the policy does not define the term "customary operations," its

4

referent is abundantly clear from the context of the policy.  The word "customary" is defined as "commonly practiced, used, or observed,"  Webster's Ninth New Collegiate Dictionary 318 (1991), and, since it is undisputed that the 25 West Street Building was insured as a "High School," the term "customary operations" can only refer to the commonly practiced activity of operating a school.  Accordingly, we agree with the district court that, "[g]iven the context of the provision, and the reasonable expectation of the parties, customary operations cannot be interpreted as anything other than the customary operations of a school."  *Keren Habinyon Hachudosh D'Rabeinu Yoel of Satmar BP*, 2011 U.S. Dist. LEXIS 25172, at *9.

Plaintiff's arguments to the contrary are unavailing.  Plaintiff contends, for example, that it "conducted activities admitted by defendant to be within the customary operations of a school 47 days before the subject loss."  Pl.'s Br. 21 (capitalizations omitted).  Specifically, Plaintiff alleges that on August 21, 2007, about twenty-five teachers held a meeting in the main room of the 25 Street West Building while students played on the roof and ate lunch in the dining room. We agree with the district court, however, that this one-day event is insufficient to defeat the application of the policy exclusion in this case because it is undisputed that the defining element of the operation of a school, the instruction of students, did not take place on that day.  *See, e.g.*, Webster's Ninth New Collegiate Dictionary 318 (1991) (defining "school" as "an organization that provides instruction" and "an institution for the teaching of children").  The fact that "students" and "teachers" of a school operated elsewhere were allegedly present in the 25 West Street Building on August 21, 2007 does not change the uncontroverted fact that since February 2006, the building had not been used as a "school," at least as that term is defined in both the dictionary and everyday usage.

5

Plaintiff further contends that the district court misconstrued and misapplied a case from the District of Colorado and a case from the Georgia Court of Appeals in reaching its conclusion. Plaintiff is incorrect. As an initial matter, the district court in no way relied on these two cases, but rather cited them as non-binding authority supporting its independently sound reasoning. Moreover, contrary to Plaintiff's assertion on appeal, both cases amply support the district court's conclusion. In *Sorema N. Am. Reinsurance Co. v. Johnson*, 574 S.E.2d 377 (Ga. Ct. App. 2002), for example, the Georgia Court of Appeals concluded that a policy exclusion similar to the one at bar applied because the owner of the building did not conduct any of its "customary operations," *i.e.*, its "lending, asset management, marketing, or liquidation operations," from the building within sixty days of the loss. *Id.* at 379. Similarly, in *Saiz v. Charter Oak Fire Insurance Co.*, No. 06-cv-01144-EWN-BNB, 2007 U.S. Dist. LEXIS 67767 (D. Colo. Sept. 12, 2007), *aff'd* 299 F. App'x 836 (10th Cir. 2008), the District of Colorado considered whether a policy exclusion almost identical to the one at issue here applied when the business, identified as a "family style restaurant," had "ceased operations and closed" more than sixty days before the loss. *See id.* at *14-15. The *Saiz* Court concluded that the exclusion applied even though the plaintiff "used the office to work on selling the . . . building and on other restaurant projects located outside of Colorado." *Id.* at *15. The Tenth Circuit affirmed, finding that although the plaintiff "may have accessed and attended to the entire premises, the premises were no longer being used as a family-style restaurant--the business pursuit identified by the policy." 299 F. App'x at 840; *see also id.* ("Although Mr. Saiz attended to the premises each day and utilized an office on-site, neither he nor the corporation continued to operate the premises as a restaurant after July 2004. . . . Because we conclude that, at the time of the loss, the business could not have

been utilizing more than 31% of the premises for customary operations, the district court properly held that, based on the uncontroverted evidence, the building was vacant under the policy terms.").

We have considered Plaintiff's remaining arguments and find them to be without merit. Accordingly, the judgment of the district court is hereby **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK