==================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
------------------------------------------------------------------
No. 187
Jannie Nesmith, &c., et al.,
          Appellants,
        v.
Allstate Insurance Company,
          Respondent.

          Mark G. Richter, for appellants.
          Barry I. Levy, for respondent.
          United Policyholders; New York Insurance Association,
Inc., amici curiae.

SMITH, J.:

          In Hiraldo v Allstate Ins. Co (5 NY3d 508 [2005]), we
interpreted a so-called "noncumulation clause" contained in a
series of successively-issued liability insurance policies.  We
held that a person suing for exposure to lead paint during the
terms of all the policies could recover no more than one policy

- 1 -

limit.

Here we interpret a nearly identical clause in a case where members of different families were successively exposed to lead paint in the same apartment. We hold that, here as in Hiraldo, the insurer's maximum total liability is only one policy limit.

**I**

In September 1991, Allstate Insurance Company issued a policy of liability insurance to the landlord of a two-family house in Rochester. The policy was renewed annually for the years beginning September 1992 and September 1993. It stated on the declarations page a $500,000 limit for "each occurrence," and contained the following noncumulation clause:

> "Regardless of the number of insured persons, injured persons, claims, claimants or policies involved, our total liability under the Family Liability Protection coverage for damages resulting from one accidental loss will not exceed the limit shown on the declarations page. All bodily injury and property damage resulting from one accidental loss or from continuous or repeated exposure to the same general conditions is considered the result of one accidental loss."

Felicia Young and her children lived in one of the two apartments in the house from November 1992 until September 1993. In July 1993, the Department of Health notified the landlord that one of the children had been found to have an elevated blood lead level and that several areas in the apartment were in violation of State regulations governing lead paint. The Department listed

the violations and directed the landlord to correct them.  The landlord made some repairs, and the Department advised him in August 1993 that the violations "have been corrected."

After the Young family moved out of the apartment in September 1993, Lorenzo Patterson, Sr. and Qyashitee Davis moved in with their two children.  Again a child was found to have an elevated blood lead level, and the Department of Health sent another letter saying that violations had been found and instructing the landlord to correct them.  (This letter was sent in December 1994, but the parties seem to assume that the elevated readings resulted at least in part from events on or before September 29, 1994, the last day of Allstate's coverage.)

In 2004, Young, on behalf of her children, and Jannie Nesmith, on behalf of the Patterson children (her grandchildren), brought two separate actions against the landlord for personal injuries allegedly caused by lead paint exposure.  Young's action was settled in 2006 for $350,000, which Allstate paid.  In 2008, Nesmith settled her claim pursuant to a stipulation that reserved the issue of the applicable policy limit for future litigation.  Allstate paid the $150,000 that it claimed was the remaining coverage.  Nesmith then brought the present action against Allstate for a declaratory judgment, asserting that a separate $500,000 limit applied to each family's claim, and that her grandchildren could therefore recover an additional $350,000.

Supreme Court granted Nesmith the declaration she

sought, saying it could not conclude that the children in the two cases were injured by exposure "to the same conditions."  The Appellate Division reversed (Nesmith v Allstate Ins. Co., 103 AD3d 190 [2013]).  The Appellate Division held that, under Hiraldo, the renewal of the policy could not make an additional limit available; that, under the plain terms of the noncumulation clause, the number of claims and claimants could not do so either; and that the injury to Young's children and Nesmith's grandchildren resulted "from continuous or repeated exposure to the same general conditions," so that the injuries were only one "accidental loss" within the meaning of the policy (id. at 193-194).  We granted leave to appeal (21 NY3d 866 [2013]) and now affirm.

## II

Hiraldo involved a single child, who had lived in the building in question for three years while three successive Allstate policies, each with a limit of $300,000, were in force. The plaintiffs claimed that the child had been exposed to lead paint continuously during the terms of all three policies, and that therefore $900,000 in coverage was available to him.  We rejected the argument, relying on a noncumulation clause not significantly different from the one involved in this case (see 5 NY3d at 512).  (The policy in Hiraldo referred simply to "loss" rather than "accidental loss," but no one suggests that that difference is relevant here.)  We found the argument of the

Hiraldo plaintiffs to be inconsistent with the policy's plain statement that Allstate's liability was limited to the amount shown on the declaration page, $500,000, "[r]egardless of the number of . . . policies involved."

Here, Nesmith does not, and could not under Hiraldo, argue that the annual renewals of the landlord's policy increased the limits of the available coverage.  And the noncumulation clause is equally clear in saying that the number of "injured persons", "claims" and "claimants" makes no difference. Nesmith's only argument is that the alleged injuries to Young's children and Nesmith's grandchildren were separate losses because they did not result "from continuous or repeated exposure to the same general conditions."

We reject this argument.  Young's children and Nesmith's grandchildren were exposed to the same hazard, lead paint, in the same apartment.  Perhaps they were not exposed to exactly the same conditions; but to say that the "general conditions" were not the same would deprive the word "general" of all meaning.  Nesmith argues that, because the landlord made an effort to correct the problem after Young's children were exposed and before Nesmith's grandchildren moved in, the "conditions" that injured her grandchildren must have been new ones.  But she makes no claim, and the record provides no basis for inferring, that a new lead paint hazard had been introduced into the apartment.  The only possible conclusion from this record is that

the landlord's remedial efforts were not wholly successful, and that the same general conditions -- the presence of lead paint that endangered children's health -- continued to exist.  Because Young's children and Nesmith's grandchildren were injured by exposure to the same general conditions their injuries were part of a single "accidental loss," and only one policy limit is available to the two families.

Accordingly, the order of the Appellate Division should be affirmed with costs.

Jannie Nesmith v Allstate Insurance Company

No. 187

PIGOTT, J.(dissenting):

The majority recognizes that this appeal presents a different set of circumstances than those in Hiraldo v Allstate Ins. Co (5 NY3d 508 [2005]), yet it reaches the same conclusion. Because I cannot agree with the majority's theory that the "noncumulation clause" limits the insurer's maximum total liability to only one policy limit under the circumstances presented here, I dissent.

The "noncumulation clause" at issue in this case provides:

> 4. **Our Limits of Liability**
> Regardless of the number of **insured persons**, injured persons, claims, claimants or policies involved, our total liability under the **Family Liability Protection** coverage for damages resulting from one accidental loss will not exceed the limit shown on the declarations page. All **bodily injury** and **property damage** resulting from one accidental loss or from continuous or repeated exposure to the same general conditions is considered the result of one accidental loss."

Fairly read, this provision provides that the policy limit – $500,000 limit for "each occurrence" - applies to limit the liability for lead exposure of children in one family during the course of that family's tenancy. Indeed, this is what we

- 1 -

held in <u>Hiraldo</u>.  However, the insurer seeks to expand that reasoning to a situation that was clearly unknown to the insured at the time he procured the additional insurance:  that coverage for liability of any kind had diminished considerably.

For purposes of this litigation, it is undisputed that the Nesmith children moved into the apartment during the second renewal period and lived in the apartment from September 1993 to September 1994.  They, like the Young children, were injured as a result of lead paint hazards.  According to the majority, because $350,000 was paid to the Young children, who were injured during the policy period from 1992 to 1993, the insured had only $150,000 coverage for the claim made by the Nesmith children.

The majority finds that this case turns on the interpretation of the "same general conditions" language of the "Limits on Liability" clause and reasons that because the Young children and Nesmith children were exposed to the same hazard, lead paint, in the apartment only one policy limit is triggered (<u>see</u> majority op, at 5).  However, this interpretation is inconsistent with the reasonable expectations of the insured (<u>see generally</u> <u>Ace Wire & Cable Co., Inc. v Aetna Cas. & Sur. Co.</u>, 60 NY2d 390, 398 [1983] [insurance contracts must be interpreted according to "the reasonable expectation and purpose of the ordinary businessman"]).

To accept that position would mean that, for purposes of insurance coverage, the insured's alleged failure to remove

lead paint in the building before the Nesmiths moved in was equivalent to the landlord having done nothing at all.  In other words, if there is any possibility of a nexus between the cause of the injuries during policy year one and the cause of injuries in any later policy year, even if the injuries were suffered by different children from different families living in the apartment at different times, coverage is only available under the first policy year.

It would also mean that when the insured renewed his policy and paid his premium, he procured less protection with respect to lead paint claims. If the insured knew that his later policies would not cover lead paint injuries occurring after his remediation efforts, he surely would not have continued purchasing the insurance at essentially the same premium from the same insurer.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Order affirmed, with costs.  Opinion by Judge Smith.  Judges Graffeo, Read and Abdus-Salaam concur.  Judge Pigott dissents in an opinion in which Chief Judge Lippman concurs.  Judge Rivera took no part.

Decided November 25, 2014