47 F.3d 34
 63 USLW 2502
 STONEY RUN COMPANY and Larrymore Organization, Plaintiffs-Appellants,
v.
PRUDENTIAL-LMI COMMERCIAL INSURANCE COMPANY, Defendant-Appellee.
Paul L. Gruner, as Executor of the Estate of Helen Ann
Gruner, Deceased, Judith Baker, as Limited Administratrix of
the Estate of William Charles Russel, Margaret Osterhoudt,
Judith Baker, Individually, James Schomer and Mary Schomer,
Defendants.
 No. 257, Docket 94-7285.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 14, 1994.
Decided Jan. 31, 1995.
 
 Jon C. Dupee, Dupee & Orloff, Goshen, NY (Jeffrey Albanese, Dupee & Orloff, of counsel), for plaintiffs-appellants.
 Julius A. Rousseau III, Kroll & Tract, New York City, for defendant-appellee.
 Before: LUMBARD, OAKES, and ALTIMARI, Circuit Judges.
 ALTIMARI, Circuit Judge:
 
 
 1
 Plaintiffs-appellants Stoney Run Company and Larrymore Organization (collectively, "Plaintiffs") appeal from a judgment of the United States District Court for the Northern District of New York (McAvoy, J.), granting defendant-appellee Prudential-LMI Commercial Insurance Company's ("Prudential") motion to dismiss two claims for relief in Plaintiffs' complaint. Plaintiffs sought a declaration that Prudential was obliged to defend and/or indemnify them in connection with three civil actions filed against Plaintiffs for damages due to carbon monoxide poisoning in their apartment buildings. The district court dismissed the two claims for relief on the grounds that they fell unambiguously within a "pollution exclusion" clause contained in the policies issued by Prudential to Plaintiffs. Because we conclude that under New York law, the pollution exclusion clause at issue does not unambiguously apply to the underlying civil actions, we reverse the judgment of the district court.
 
 BACKGROUND
 
 2
 Stoney Run Company is a partnership that owns the Stoney Run Apartments, a real estate complex in Kingston, New York. Larrymore Organization is a Virginia corporation that acts as the real estate agent for Stoney Run. Prudential issued two general commercial liability policies to Plaintiffs in connection with the Stoney Run Apartments. During the effective dates of these policies, several tenants at the Stoney Run Apartments were killed or injured by the inhalation of carbon monoxide emitted into their apartments due to a faulty heating and ventilation system.
 
 
 3
 Subsequently, three civil actions were commenced against Plaintiffs by the injured persons or their legal representatives. The first action (the "Baker action") alleged that Plaintiffs "negligently and carelessly caused personal injury, pain and suffering to [ ] decedent." The second action (the "Gruner action") alleged that decedent died "as a result of asphyxia due to carbon monoxide" released into her apartment. The third action (the "Schomer action") alleged that Schomer was injured by "carbon monoxide which was released by the negligently maintained heating and ventilation system in her apartment."
 
 
 4
 Prudential declined to defend or provide coverage for the Gruner and Schomer actions, and disclaimed coverage for the Baker action. Prudential relied on the following exclusion clause contained in its policies:
 
 This insurance does not apply to:
 
 5
 (f)(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:
 
 
 6
 (a) [a]t or from premises you own, rent or occupy[.]
 
 
 7
 Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.
 
 
 8
 This clause (hereinafter the "pollution exclusion clause") is a standard industry clause used in general commercial liability policies.
 
 
 9
 Plaintiffs commenced this action in the district court, seeking a declaratory judgment against Prudential that it was obligated to defend and/or indemnify Plaintiffs with respect to the three civil actions. Upon Prudential's motion pursuant to Fed.R.Civ.P. 12(b)(6), the district court dismissed the counts of Plaintiffs' complaint relating to the Gruner and Schomer actions, but granted Plaintiffs' cross-motion for summary judgment to the extent that Prudential is obligated to defend the Baker action. The district court reasoned that the pollution exclusion clause applied unambiguously to the allegations contained in the Gruner and Schomer actions, but not to the allegations in the Baker action. Pursuant to Fed.R.Civ.P. 54(b), the district court certified as final the dismissal of the claims for relief relating to the Gruner and Schomer actions.
 
 
 10
 Plaintiffs now appeal the district court's dismissal of the claims for relief in their complaint relating to the Gruner and Schomer actions.
 
 DISCUSSION
 
 11
 The sole issue on appeal is whether the claims for relief alleged in the Gruner and Schomer actions fall unambiguously within the pollution exclusion clause under New York law. Prudential argues that the district court correctly held that the injuries caused by carbon monoxide poisoning clearly fell within the pollution exclusion clause: there was a "discharge, dispersal, release or escape" of carbon monoxide, a "pollutant," "at or from the premises" owned by Plaintiffs. Plaintiffs, on the other hand, contend that the district court should have considered the purpose of the pollution exclusion clause in determining whether or not the clause was subject to another reasonable interpretation. The purpose of this standard clause, Plaintiffs maintain, is to exclude coverage only for environmental pollution, not damages due to routine commercial hazards such as a faulty heating and ventilation system. We conclude that the pollution exclusion clause at issue is ambiguous as applied to the Gruner and Schomer actions because it is reasonable to interpret that clause as applying only to environmental pollution.
 
 
 12
 We review de novo the district court's grant of Prudential's motion to dismiss. See Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir.1991). Under New York law, an insurer's duty to defend is "exceedingly broad." Colon v. Aetna Life & Casualty Ins. Co., 66 N.Y.2d 6, 494 N.Y.S.2d 688, 689, 484 N.E.2d 1040, 1041 (1985). An insurer must defend a claim whenever the complaint suggests a reasonable possibility of coverage, regardless of the merits of the action. See Fitzpatrick v. American Honda Motor Co., 78 N.Y.2d 61, 571 N.Y.S.2d 672, 673-74, 575 N.E.2d 90, 91-92 (1991).
 
 
 13
 An insurer, however, may negate coverage by virtue of an exclusionary clause if the insurer establishes that the clause "is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." Continental Casualty Co. v. Rapid-American Corp., 80 N.Y.2d 640, 593 N.Y.S.2d 966, 972, 609 N.E.2d 506, 512 (1993). See also Niagara County v. Utica Mut. Ins. Co., 80 A.D.2d 415, 439 N.Y.S.2d 538, 542 (1981) (to be relieved of its obligation to defend, insurer must "demonstrate that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions....") (quotations omitted). When construing an insurance policy, the tests applied are "common speech" and the "reasonable expectation and purpose of the ordinary businessman." Ace Wire & Cable Co. v. Aetna Casualty & Surety Co., 60 N.Y.2d 390, 469 N.Y.S.2d 655, 658, 457 N.E.2d 761, 764 (1983). Any ambiguity is to be construed against the insurer, particularly when the ambiguity is in an exclusionary clause. See id. An exclusionary clause, moreover, can be ambiguous in one context and not in another. See Continental Casualty, 593 N.Y.S.2d at 972, 609 N.E.2d at 512.
 
 
 14
 As a threshold matter, we believe that it is appropriate to construe the standard pollution exclusion clause in light of its general purpose, which is to exclude coverage for environmental pollution. New York courts have consistently considered this purpose in determining whether an insurer is obliged to defend. In Continental Casualty, for example, the Court of Appeals considered an insurer's duty to defend actions for personal injuries suffered by assorted contractors who were exposed to asbestos products. The pollution exclusion clause before the court, which differs slightly from the one we now consider, applied to the discharge, dispersal, release, or escape of irritants, contaminants, or pollutants "into or upon land, the atmosphere or any water course or body of water." The court held that the pollution exclusion clause did not apply, stating that the term "atmosphere" was ambiguous as applied to the inhalation of asbestos. See 593 N.Y.S.2d at 972-73, 609 N.E.2d at 512-13. The court then noted that "[a]mbiguity is further revealed by examining the purpose of the clause, meant to exclude coverage for environmental pollution." Id. at 973, 609 N.E.2d at 513. In addition, the court stated that terms such as "discharge" and "dispersal" were terms of art of environmental law used in reference to injuries caused by "disposal or containment of hazardous waste." Id.
 
 
 15
 Subsequent decisions of New York courts have also construed pollution exclusion clauses as applying only to environmental pollution. For example, in Karroll v. Atomergic Chemetals Corp., 194 A.D.2d 715, 600 N.Y.S.2d 101 (1993), the court held that the pollution exclusion clause did not apply to injuries suffered by a bulldozer operator who was accidentally sprayed with sulfuric acid. In so holding, the court stated that the clause could be "reasonably interpreted to apply only to instances of environmental pollution." Id., 600 N.Y.S.2d at 102. See also Miano v. Hehn, 206 A.D.2d 957, 614 N.Y.S.2d 829, 830 (1994) (relying on Karroll, court concludes that pollution exclusion clause is ambiguous as to whether the "environment" includes the air within a residential home through which asbestos passes); Generali-U.S. Branch v. Caribe Realty Corp., 160 Misc.2d 1056, 612 N.Y.S.2d 296, 299 (Sup.Ct.1994) ("there is a reasonable interpretation of the exclusion ... that [it] applies only to claims for injuries based on environmental pollution"); Schumann v. State of New York, 160 Misc.2d 802, 610 N.Y.S.2d 987, 990 (Ct.Cl.1994) (same).
 
 
 16
 Prudential claims that Continental Casualty is inapplicable because that decision interpreted a different pollution exclusion clause. In contrast, Prudential argues, the clause in this case refers more broadly to the discharge of pollutants at or from the premises owned by the insured. See Oates v. State of New York, 157 Misc.2d 618, 597 N.Y.S.2d 550, 553 (Ct.Cl.1993) (injuries suffered by child due to insured's negligent failure to remove lead paint from apartment falls within pollution exclusion clause; court notes that "only reasonable interpretation [of clause] is that it 'is just what it purports to be--absolute' ") (citations omitted). We reject this argument.
 
 
 17
 Although the Court of Appeals in Continental Casualty did base its decision in part on the ambiguous term "atmosphere," it also clearly relied on the general purpose of the pollution exclusion clause. Moreover, in its discussion of this purpose, the Court of Appeals relied on two decisions construing pollution exclusion clauses nearly identical to the clause in the case at bar. See West Am. Ins. Co. v. Tufco Flooring East, Inc., 104 N.C.App. 312, 409 S.E.2d 692, 699 (1991) (court concludes that change in language of pollution exclusion clause was not intended "to expand the scope of the clause to non-environmental damage" and that "a discharge into the environment is necessary for the clause to be applicable"); Atlantic Mut. Ins. Co. v. McFadden, 413 Mass. 90, 595 N.E.2d 762, 764 (1992) ("We conclude that an insured could reasonably have understood the provision at issue to exclude coverage for injury caused by certain forms of industrial pollution, but not coverage for injury allegedly caused by the presence of leaded materials in a private residence.").
 
 
 18
 Prudential also argues that Continental Casualty and the cases Plaintiffs rely upon are distinguishable because the alleged damages in those cases resulted from direct contact with useful products, such as asbestos, chemicals, or lead paint, intentionally placed into areas where they caused harm. By contrast, Prudential argues, carbon monoxide is a toxic byproduct without a useful purpose that unintentionally was released into the Stoney Run Apartments. See, e.g., Schumann, 610 N.Y.S.2d at 990.
 
 
 19
 Even if several of the cases cited by Plaintiffs do involve so-called direct contact with useful products, courts have not focused on this distinction as the basis for their decisions. The issue remains whether the pollution exclusion clause unambiguously includes injuries caused by exposure to carbon monoxide within an apartment. As set forth above, a reasonable interpretation of the pollution exclusion clause is that it applies only to environmental pollution, and not to all contact with substances that can be classified as pollutants. We hold that the release of carbon monoxide into an apartment is not the type of environmental pollution contemplated by the pollution exclusion clause.
 
 
 20
 An examination of the manner in which other jurisdictions interpret pollution exclusion clauses further bolsters our conclusion that the clause is ambiguous as applied to the facts presented on this appeal. Two courts addressing nearly identical factual situations have deemed pollution exclusion clauses ambiguous. In a recent decision, the United States Court of Appeals for the Tenth Circuit held that a standard pollution exclusion clause did not exclude coverage for injuries tenants sustained due to carbon monoxide emissions from a faulty wall heater. See Regional Bank of Colo., N.A. v. St. Paul Fire and Marine Ins. Co., 35 F.3d 494 (10th Cir.1994). The court found the exclusion clause ambiguous, reasoning that
 
 
 21
 [w]hile a reasonable person of ordinary intelligence might well understand carbon monoxide is a pollutant when it is emitted in an industrial or environmental setting, an ordinary policyholder would not reasonably characterize carbon monoxide emitted from a residential heater which malfunctioned as "pollution." It seems far more reasonable that a policy holder would understand the exclusion as being limited to irritants and contaminants commonly thought of as pollution and not as applying to every possible irritant or contaminant imaginable.
 
 
 22
 Id. at 498.
 
 
 23
 Similarly, another court held that a standard pollution exclusion clause did not apply to injuries caused by carbon monoxide emissions from a leaking gas heater in a home. See Thompson v. Temple, 580 So.2d 1133, 1135 (La.Ct.App.1991) ("intent of the insurance industry in adding pollution exclusion clauses ... was to exclude coverage for entities which knowingly pollute the environment over a substantial period of time"). See also Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co., 976 F.2d 1037, 1043 (7th Cir.1992); Westchester Fire Ins. Co. v. City of Pittsburg, Kan., 768 F.Supp. 1463, 1469 n. 9 (D.Kan.1991), aff'd sub. nom. Pennsylvania Nat. Mut. Casualty Ins. Co. v. City of Pittsburg, Kan., 987 F.2d 1516 (10th Cir.1993); Minerva Enter., Inc. v. Bituminous Casualty Corp., 312 Ark. 128, 851 S.W.2d 403, 406 (1993); Atlantic Mutual Ins. Co., 595 N.E.2d at 764; West Am. Ins. Co., 409 S.E.2d at 700. But see Essex Ins. Co. v. Tri-Town Corp., 863 F.Supp. 38 (D.Mass.1994) (injuries sustained by buildup of carbon dioxide discharged from an ice-cleaning machine inside an arena are covered by pollution exclusion clause); League of Minn. Cities Ins. Trust v. City of Coon Rapids, 446 N.W.2d 419 (Minn.Ct.App.1989) (same).
 
 
 24
 We need not decide the precise scope of the pollution exclusion clause contained in Plaintiffs' policies. Instead, we need only determine whether the clause is ambiguous as applied to the facts of this case and subject to no other reasonable interpretation than the one advanced by Prudential. As noted above, the pollution exclusion clause can be reasonably interpreted as applying only to environmental pollution. A reasonable policyholder might not characterize the escape of carbon monoxide from a faulty residential heating and ventilation system as environmental pollution. Accordingly, we find the pollution exclusion clause ambiguous as applied to the Gruner and Schomer actions.
 
 CONCLUSION
 
 25
 Because the pollution exclusion clause is ambiguous as applied to the facts presented, we reverse the judgment of the district court to the extent that it granted Prudential's motion to dismiss the Gruner and Schomer actions. The district court is directed to enter judgment consistent with this opinion.