SPHERE DRAKE INSURANCE
COMPANY, P.L.C.,
Plaintiff,

v.

Y.L. REALTY COMPANY, Kadish Mazel
Realty Corporation, David Bradley Man-
agement, Janice & Richard Investments,
Inc., Gloria Estrada, an Infant Under
the Age of 14 Years, by her Mother and
Natural Guardian, Cruz Salgado and
Cruz Salgado, Individually, Defendants.

No. 95 Civ. 2777(BSJ).

United States District Court,
S.D. New York.

Oct. 17, 1997.

Bivona & Cohen, P.C. by Mitchell R. Gold-
klang, New York City, for Plaintiff.

Talisman, Rudin, Eskenazi & Delorenz,
P.C. by Mark A. Eskenazi, Mineola, NY, for
Defendants.

## MEMORANDUM & ORDER

JONES, District Judge.

This case involves the rights and responsi-
bilities of an insurance company in defending
a state negligence action. At issue is wheth-
er Sphere Drake Insurance Company, P.L.C.

("Sphere Drake") is obligated to defend and indemnify its insured in a New York action involving the named defendants in the current case. Pending is Sphere Drake's motion for summary judgment, pursuant to Fed. R.Civ.P. 56. For the reasons stated below, Sphere Drake's motion is denied, and partial summary judgment for the defendants is granted.

## I. Background

Sphere Drake is a British insurance company that issued two general liability policies for a building located at 1121 Morrison Avenue, Bronx, New York. Y.L. Realty Company ("Y.L.Realty"), Kadish Mazel Realty Corporation ("Kadish Mazel"),[1] David Bradley Management ("David Bradley"), and Janice & Richard Investments, Inc. ("Janice & Richard") at one time or another were the owners and/or managers of that building.[2] David Bradley apparently became the managing agent of the building on March 5, 1992, following a foreclosure action by the Federal Home Loan Mortgage Corporation that resulted in the appointment of a receivership. On January 3, 1994, the building was resold to a new owner, who then appointed a new managing agent, not named in this suit.

The insurance policies issued by Sphere Drake for 1121 Morrison Avenue contain a notice provision, requiring the insured to provide notice of an "occurrence" to Sphere Drake "as soon as practicable." An "occurrence" is defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." The policies further require the insured, in the event of a claim or suit, to "immediately forward to the company every demand, notice, summons or other process received by him or by his representative." The policies also contain a "Pollution Exclusion" clause, by which coverage is excluded for "bodily injury or property damage arising out of the actual, alleged, or threatened discharge, dispersal, release or escape of pollutants ...

[a]t or from premises owned, rented or occupied by the named insured."

On or about January 10, 1994, Gloria Estrada and Cruz Salgado filed a lawsuit ("Estrada suit") in New York Supreme Court, Bronx County, alleging that from 1982 to 1992, Gloria Estrada "sustain[ed] severe, acute lead poisoning" as a result of "ingest[ing] flaking and rotting paint chips" in her apartment in the Morrison Avenue building (Estrada Compl. ¶ 11). The lawsuit named Kadish Mazel, David Bradley and Janice Richard Investments as defendants.

Sometime after the filing of the Estrada suit, Sphere Drake was notified of its duty as insurer of the building to defend the lawsuit and to indemnify the insured parties. Sphere Drake claims that this notification was not until October 28, 1994, over nine months after the complaint was originally filed. David Bradley disputes this, claiming that it forwarded a copy of the Estrada summons and complaint sometime around January 27, 1994, to an insurance broker who it believed was representing Sphere Drake. Subsequently, that brokerage firm notified Y.L. Realty and Kadish Mazel that it was not involved in insuring 1121 Morrison Avenue; David Bradley apparently only later learned of this information.

On April 21, 1995, Sphere Drake filed the current action, seeking a declaratory judgment that the insurance policies for 1121 Morrison Avenue did not cover the Estrada lawsuit. The declaratory judgement action seeks relief based on three grounds: (1) that Y.L. Realty, et al. failed to comply with the notice requirements in the policies; (2) that the Pollution Exclusion clause in the policies precludes coverage for the alleged lead poisoning to Estrada; and (3) that Estrada's alleged injuries occurred outside of the period of coverage in the policies. On October 18, 1995, Sphere Drake moved for summary judgment based on the first and second of these grounds—untimely notification and preclusion by the Pollution Exclusion clause.

---

1. From the record, it appears that Y.L. Realty is associated with Kadish Mazel. It also appears that Y.L. Realty and Kadish Mazel have defaulted in the underlying action.

2. The insurance policies in question name Y.L. Realty, Kadish Mazel, and David Bradley. For simplicity, the insured parties will be referred to as "Y.L. Realty, et al."

This memorandum addresses Sphere Drake's motion for summary judgment based on those two claims.

## II. Discussion

### A. The Applicable Standard for Summary Judgement

Summary judgement is appropriate only when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, a court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. *Chambers v. T.R.M. Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir.1994). Summary judgment may be entered against the moving party, even if his opponent has not cross-moved, if no genuine issues of material fact remain. *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983).

### B. The Notice Provision

 Compliance with a notice provision contained in an insurance contract is a condition precedent to recovery under New York law. *Utica Mut. Ins., Co. v. Fireman's Fund Ins. Cos.*, 748 F.2d 118, 121 (2d Cir. 1984). Failure by the insured to comply with such a provision relieves the insurer of liability. *Id.* In determining compliance, the court considers if notification by the insured was reasonable under all the circumstances. *Deso v. London & Lancashire Indem. Co.*, 3 N.Y.2d 127, 129, 164 N.Y.S.2d 689, 143 N.E.2d 889 (1957). Whether notice has been timely is generally a question of fact; only when delay is found to be wholly unexcused is notice held to be late as a matter of law. *Id.* at 129–30, 164 N.Y.S.2d 689, 143 N.E.2d 889; *Power Auth. v. Westinghouse Elec. Corp.*, 117 A.D.2d 336, 502 N.Y.S.2d 420, 422 (1986).

Sphere Drake claims that its insured failed to comply with the notice provisions in the policies for 1121 Morrison Avenue as a matter of law. Specifically, Sphere Drake asserts that it did not receive notice of the Estrada suit until October 28, 1994, over nine months after the suit was filed.

David Bradley challenges this claim, questioning whether Sphere Drake first received notice of the Estrada suit on October 28, 1994, as claimed. David Bradley further asserts that it complied with the provisions of the policy by providing Sphere Drake with reasonable notice under the circumstances. David Bradley claims that it first received the summons and complaint in the Estrada suit on January 27, 1994, and that it immediately forwarded a copy of the papers to an insurance brokerage firm it believed was representing Sphere Drake. Only later did David Bradley learn that the brokerage firm was not involved in insuring 1121 Morrison Avenue and that it might not have forwarded the Estrada papers to Sphere Drake.

Based on these efforts, David Bradley asserts that it complied with the notice provisions in the insurance policies. In support of this assertion, David Bradley notes that it was the managing agent for 1121 Morrison Avenue from only March 5, 1992, to January 3, 1994. During that time, it claims, it had only limited access to insurance records due to the fact that its involvement resulted from a foreclosure action and subsequent appointment of a receivership.

 Based on the parties' submissions it is clear that summary judgment is inappropriate as to this issue. A genuine dispute remains as to when Sphere Drake actually received notice of the Estrada claims and as to whether David Bradley gave reasonable notice under the circumstances. These questions remain triable issues of fact and cannot be decided as a matter of a law. Therefore, Sphere Drake's motion for summary judgment as to the notice provision is denied.

### C. The Pollution Exclusion Clause

Sphere Drake's second claim for summary judgment is based on the Pollution Exclusion clause contained in the insurance policies. The relevant clause excludes coverage:

"1. To bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

(a) At or from premises owned, rented or occupied by the named insured;

. . .

"Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

Sphere Drake claims that this clause encompasses lead paint poisoning and therefore excludes coverage for claims in the Estrada suit. The Court disagrees with this broad interpretation and grants summary judgment to the defendants on the Pollution Exclusion clause issue.

██ It is well settled in New York that ambiguities in an insurance policy are to be construed against the insurer, particularly when found in an exclusionary clause. *Ace Wire & Cable Co. v. Aetna Cas. & Sur. Co.*, 60 N.Y.2d 390, 398, 469 N.Y.S.2d 655, 457 N.E.2d 761 (1983). "Any such exclusions or exceptions from policy coverage must be specific and clear in order to be enforced. They are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction." *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 311, 486 N.Y.S.2d 873, 476 N.E.2d 272 (1984).

██ Several courts recently have interpreted pollution exclusion clauses similar to the one at issue here. The overwhelming trend in these cases has been to hold that such clauses do not exclude contaminants such as lead paint poisoning. *See, e.g., Lefrak Organization, Inc. v. Chubb Custom Ins. Co.*, 942 F.Supp. 949 (S.D.N.Y.1996) (pollution exclusion clause does not preclude coverage for lead paint poisoning); *Cepeda v. Varveris*, 234 A.D.2d 497, 651 N.Y.S.2d 185 (1996) (same); *G.A. Ins. Co. v. Naimberg Realty Assoc.*, 233 A.D.2d 363, 650 N.Y.S.2d 246 (1996) (same); *General Accident Ins. Co. v. Idbar Realty Corp.*, 163 Misc.2d 809, 622 N.Y.S.2d 417 (1994) (same); *Generali–U.S. Branch v. Caribe Realty Corp.*, 160 Misc.2d 1056, 612 N.Y.S.2d 296 (1994) (same); *Atlantic Mut. Ins. Co. v. McFadden*, 413 Mass. 90, 595 N.E.2d 762 (1992) (same). *But see Oates by Oates v. State of New York*, 157 Misc.2d 618, 597 N.Y.S.2d 550 (1993) (pollution exclusion clause bars coverage for lead paint poisoning). These courts have held, and this

Court agrees, that pollution exclusion clauses refer only to industrial and environmental pollution. *See Stoney Run Co. v. Prudential–L.M.I. Commercial Ins. Co.*, 47 F.3d 34 (2d Cir.1995) (pollution exclusion clause does not preclude coverage for carbon monoxide poisoning caused by faulty heating and ventilation system); *Garfield Slope Hous. Corp., v. Public Serv. Mut. Ins. Co.*, 973 F.Supp. 326 (E.D.N.Y.1997) (pollution exclusion clause does not bar coverage for injury caused by fumes emitted from carpeting); *Continental Cas. Co. v. Rapid–American Corp.*, 80 N.Y.2d 640, 593 N.Y.S.2d 966, 609 N.E.2d 506 (1993) (pollution exclusion clause does not bar coverage for asbestos poisoning); *West American Ins. Co. v. Tufco Flooring E., Inc.*, 104 N.C.App. 312, 409 S.E.2d 692 (1991) (pollution exclusion clause does not bar coverage for damage caused by fumes emitted from industrial flooring).

██ The language of the exclusion clause supports this interpretation. The clause discusses injuries caused by "discharge, dispersal, release or escape of pollutants." These are terms of art in environmental law, generally used to describe the improper disposal or containment of hazardous waste. *Tufco Flooring*, 409 S.E.2d at 699. These terms do not ordinarily encompass the type of "movement" associated with lead paint poisoning. Lead paint poisoning is not caused by "discharge, dispersal, release or escape;" rather, lead poisoning results from ingestion or inhalation of paint that has flaked over time. To extend the meaning of the clause to cover lead paint poisoning would require an overly broad interpretation of the above-quoted language inconsistent with accepted usage and the expectations of the contracting parties.

The definition of "pollutant" in the exclusion clause further suggests that it refers to industrial and environmental pollution. The clause defines "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." Conspicuously absent from this list is any reference to lead paint or lead-paint-type substances. While this omission in itself is not fatal to Sphere Drake's

argument, it is significant in the context of the clause as a whole. The "pollutant" definition and accompanying examples suggest products or byproducts involved in the operation of equipment or machinery. Lead, as an ingredient of paint, falls far outside this definition.

Furthermore, while the insurance policies in question do not specify lead paint poisoning in the Pollution Exclusion clause, in a separate clause they do specify an exclusion for injuries related to asbestos poisoning. This fact is noteworthy by way of comparison, as asbestos is conceptually analogous to lead. Both are components of building materials, and neither is classified commonly as a "pollutant." This similarity is evidenced by the fact that courts have used similar analyses in interpreting pollution exclusion clauses for each. *See, e.g., Lefrak Org.*, 942 F.Supp. at 954–55 (in lead paint poisoning case, relying on reasoning of asbestos case of *Continental Cas. Co. v. Rapid–American Corp.*, 80 N.Y.2d 640, 593 N.Y.S.2d 966, 609 N.E.2d 506 (1993)); *see also Stoney Run*, 47 F.3d at 38 (in dicta, grouping asbestos and lead paint poisoning together as part of class of injuries "result[ing] from direct contact with useful products"). That the parties in this case provided for a separate asbestos exclusion clause strongly suggests that lead paint is beyond the scope of the Pollution Exclusion clause.

Sphere Drake argues that the history of pollution exclusion clauses supports its argument that lead paint poisoning should be excluded. A thorough reading of that history leads to a different conclusion. From 1971 to 1982, pollution exclusion clauses were required by law for all liability policies in New York. *Rapid–American*, 80 N.Y.2d at 652, 593 N.Y.S.2d 966, 609 N.E.2d 506. The purpose was to "assure that corporate polluters bear the full burden of their own actions spoiling the environment." *Id.* (quoting 1971 McKinney's Session Laws of N.Y., at 2633). Thus, from the beginning these clauses were concerned with environmental and industrial pollution.

The statutory requirement was removed in 1982 because many corporate polluters, unable to procure insurance, were simply going out of business when liability arose. *Id.* Nevertheless, several insurance companies continued to include a pollution exclusion clause in their policies. *Id.* These policies referred to pollution "into or upon land, the atmosphere or any body of water." *Generali–U.S.*, 612 N.Y.S.2d at 298. In 1986, the insurance industry redrafted the exclusion clause to replace the land, atmosphere or water reference with "at or from premises you own, rent or occupy." It is upon this change, present in the policy in this case, that Sphere Drake bases much of its argument.

Sphere Drake claims that the change in language evinces an intent by insurers to broaden the pollution exclusion to cover contaminants such as lead paint. However, this Court agrees with other courts that have addressed the amended language, *see, e.g., Lefrak Org.*, 942 F.Supp. at 955; *Generali–U.S.*, 612 N.Y.S.2d at 298, in finding that the change of language did not exclude liability for lead-paint-related injury. First, the definition of pollutant in the post-amendment exclusion remains unchanged. There still is no reference to lead, paint, or lead-based paint. Moreover, the amended language does nothing to alter that part of the exclusion detailing "discharge, dispersal, release or escape." Prior to the 1986 amendment, it was this language, at least in part, that led courts to find that the pollution exclusion clauses did not encompass lead paint poisoning. *See, e.g., Rapid–American*, 80 N.Y.2d at 654, 593 N.Y.S.2d 966, 609 N.E.2d 506. That this language was left fundamentally unchanged belies the argument that the 1986 amendment was meant to bring contaminants such as lead within the exclusion's purview. Finally, whatever the intent of the insurance industry in amending the exclusion clause language, the fact remains that the surviving language fails to exclude lead with adequate specificity. At best, the language remains ambiguous, and this ambiguity is fatal to Sphere Drake's position. *See Lefrak Org.*, 942 F.Supp. at 957; *Ace Wire*, 60 N.Y.2d at 398, 469 N.Y.S.2d 655, 457 N.E.2d 761.

Based on the foregoing, the Court finds that the Pollution Exclusion clause in Sphere Drake's policies does not encompass the lead

paint poisoning alleged in the Estrada suit. Therefore, Sphere Drake's motion for summary judgment based on that clause is denied. In addition, because no genuine issue of material fact as to the pollution exclusion clause remains, *see Prevost*, 722 F.2d at 968, the defendants are granted summary judgment on this issue.

### III. Conclusion

Sphere Drake's motion for summary judgment declaring that it has no duty to defend or indemnify Y.L. Realty, et al. based on the notification and Pollution Exclusion clauses of the insurance policies is denied. The defendants are granted summary judgment on the issue of whether the Pollution Exclusion clause precludes coverage for the lead paint poisoning alleged in the Estrada suit.

SO ORDERED: