**UNITED CAPITAL CORP. and Tri-Mart., Corp., Plaintiffs,**

v.

**TRAVELERS INDEMNITY COMPANY OF ILLINOIS, Defendant.**

**No. 02–CV–3066(TCP)(MLO).**

United States District Court, E.D. New York.

Dec. 20, 2002.

---

Paul E. Breene, Newark, NJ, for Plaintiffs.

Stephen M. Lazare, New York City, for Defendant.

## MEMORANDUM AND ORDER

PLATT, District Judge.

This action is brought by plaintiffs, United Capital Corp. ("UCC" or "Plaintiff") and its wholly-owned subsidiary of Tri–Mart Corp. ("Tri–Mart" and collectively with UCC, "Plaintiffs"), against Travelers Indemnity Company of Illinois ("Travelers" or "Defendant") and arises out of a dispute regarding insurance coverage. In

the Complaint, Plaintiffs allege three claims. The First Claim is for breach of an insurance policy for failure to provide insurance coverage. The Second Claim is for breach of the covenant of good faith and fair dealing related to the alleged breach. The Third Claim is also related to the alleged breach and asserts a claim for breach of fiduciary duty.

Presently before this Court are cross-motions for· summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs have moved for summary judgment in regards to the First Claim on the issue of whether a certain exclusion is applicable.[1] The Defendant has moved for summary judgment in order to dismiss each of the three claims in their entirety. Both parties agree that there are no genuine issues of material fact. The Court heard oral argument on the motions on December 6, 2002.

For· the reasons discussed below, Plaintiffs' Motion is GRANTED on the First Claim and Defendant's Motion is DENIED as to the First Claim. Defendant's Motion is, however, GRANTED as to the Second and Third Claims.

## BACKGROUND

The policy at issue is a property insurance policy which provides, *inter alia,* insurance coverage for physical loss or damage to Plaintiffs property for the period of September 29, 2001, through September 29, 2002, (hereinafter the "Policy"). Under the Policy, Plaintiff is insured for up to $25,000,000 of property losses.

Section A of the Policy, entitled "Insuring Agreement" provides that, "[Defendant] will pay for direct physical loss or damage to Covered Property ... caused by or resulting from a **Covered Cause of Loss. Covered Cause of Loss** means risks of direct physical loss unless the loss is excluded [or limited by other sections of the policy]." (Breene Aff., Ex. A.) (emphasis added.)

On October 23, 2001, a fire severely damaged a building owned by Plaintiffs in Mount Morris, Michigan. Plaintiffs subsequently filed an insurance claim for building and personal property damage.

At the time of the fire the building had been "vacant" for more than 60 days. The Mt. Morris police determined that the fire had been caused by trespassers who had broken into the building. (Breene Aff., Ex. E.) The Fire Department further concluded, "this was in fact an arson fire and that there were approx. 4–5 different places where the fire had been started that being the ceiling, in the stairwell, and the floor."[2] (Breene Aff., Ex. E.)

After an investigation, Defendant denied Plaintiffs' insurance claim based on its conclusion that the Policy excluded coverage for acts of "Vandalism." In making its determination, Defendant relied on Section D of the Policy entitled "Exclusions". Section D.2.k. (the "Vacancy Exclusion") provides in relevant part:

2. The Company will not pay for loss or damage caused by or resulting from any of the following:

**1.** Since Plaintiffs' Motion does not address each· of Defendants thirteen affirmative defenses set forth in the Answer, including that Plaintiffs should be prohibited from replacement costs proceeds unless they actually repair, the Court will not address whether any of these defenses might negate coverage under the Policy, notwithstanding this decision.

Plaintiffs' motion is therefore a partial motion for summary judgment on the first claim.

**2.** The court acknowledges that the term "arson fire" as was used in the police report is redundant, but will be used in this decision to denote fires caused in a manner similar to the one at issue.

k. If the building or leased premises where loss or damage has occurred has been "vacant" for more than 60 days before that loss or damage occurs, the Company will not pay for any loss or damage caused by any of the following, even if they are **Covered Causes of Loss**:

(1) **Vandalism**;

(2) Sprinkler leakage;

(3) Building glass Breakage;

(4) Water damage;

(5) Theft; or

(6) Attempted theft.

(Breene Aff., Ex. A)(emphasis added.)

The Policy does not explicitly exclude coverage for "Fire" or "Arson" (individually or collectively) under this provision.

Although individual "Covered Causes of Loss" are not clearly specifically set forth in the Policy, the term is used throughout the Policy and at times delineates between "Fire" and "Vandalism." Specifically, "Fire" and "Vandalism" are listed separately in regards to "Outdoor Property", which is defined as "retaining walls not part of a building, lawns ... tress, shrubs, plants, bridges ... walks, etc." (Breene Aff., Ex. A.) Section B.1.h (the "Outdoor Property Section"), provides that insurance applies to 'Outdoor Property' at the Insured's premises for loss or damage only by the following **Covered Causes of Loss:**

(1) Fire;

(2) Lightning;

(3) Explosion;

(4) Riot or civil commotion;

(5) Vandalism or malicious mischief; or

(6) Aircraft or vehicles ..

(Breene Aff., Ex. A.)

The Policy also differentiates between "Fire" and "Vandalism" when defining "Specified Cause of Loss". Section G.1 lists "Fire" and "vandalism" separately. (Breene Aff., Ex. A.) "Specified Cause of Loss" is used throughout the Policy and is relevant to, *inter alia*, what coverage is extended to pollution cleanup and an exclusion regarding the collapse of the building.

As indicated above, both parties agree that there are no genuine issues of material fact. The determinative issue is whether an "arson fire" is an act of "Vandalism" under the Policy or whether it should be viewed as a separate "Covered Cause of Loss", namely, "Fire".

Plaintiffs contend that arson is not subsumed under "Vandalism" and argue that the listing "Fire" and "Vandalism" as separate "Covered Causes of Loss" in the Outdoor Property Section, as well their being listed separately under the definition of "Specified Causes of Loss" at least creates an ambiguity as to whether arson is excluded from coverage. They interpret the Policy to contain the enumerated "Covered Causes of Loss" set forth in the Outdoor Property Section and that the Vacancy Exclusion excludes only that subset of "Covered Causes of Loss" enumerated in the Vacancy Exclusion. Since "Fire" caused the destruction of the building and is not listed in the Vacancy Exclusion, they contend they are entitled to coverage.

Defendant argues that while all fires may not be excluded by the Vacancy Exclusion, arson is excluded because arson is by definition an act of "Vandalism". Defendant further contends that the separate listing of "Fire" and "Vandalism" in the other sections of the Policy does not create an ambiguity. Specifically, Defendant argues the Outdoor Property Section provides a different form of coverage than the rest of the Policy and that the enumeration of "Causes of Loss" only applies to that coverage.

According to Defendant, the Policy generally provides "all-risk" coverage, which means that Plaintiffs' loss is covered unless it is limited or excluded by other terms of the Policy. Defendant contends

however, that the Section regarding "Outdoor Property" provides "named perils" coverage, in which a loss is not covered by the Policy unless the peril which caused the loss is specifically listed. Defendant therefore concludes that any ambiguity created by the enumeration of "Covered Causes of Loss" in Section B.1.h. applies only to "Outdoor Property" and that there are no enumerated "Covered Causes of Loss" for the remainder of the Policy. (Def. Reply Mem. at 4.)

Although there is somewhat conflicting case law on the issue, courts generally agree that the ordinary use of the word vandalism would include an arson. Nonetheless, under the specific wording and format of the Policy, the Court finds that the Policy is at least ambiguous as to whether "Vandalism" in the Vacancy Exclusion includes arson. Because any ambiguity must be construed against the insurer as the drafter of the Policy, the Court finds for Plaintiffs on this issue and holds that the Vacancy Exclusion does not provide a basis for the denial of coverage.

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment should be granted where there is no genuine issue as to any material fact. Fed R. Civ. P. 56(c). Summary judgment is a particularly appropriate vehicle for resolving insurance coverage disputes. *Freedom Gravel Products, Inc. v. Michigan Mutual Insurance Company*, 819 F.Supp. 275, 277 (W.D.N.Y. 1993).

### B. Breach of the Insurance Policy

#### 1. Legal Standard

Both parties have briefed the present motions as if New York law applies to the interpretation of the Policy. The Court agrees that New York law applies and also notes that there does not seem to be any significant difference between New York and Michigan law on the interpretation of insurance polices such as the one at issue.

When construing an insurance policy, words are accorded their normal, everyday meaning. As the Second Circuit has stated, "[w]hen construing an insurance policy, the tests applied are 'common speech' and the 'reasonable expectation and purpose of the ordinary businessman'." *Stoney Run Co. v. Prudential–LMI Commercial Insurance Company*, 47 F.3d 34, 37 (2d Cir.1995) (quoting *Ace Wire & Cable Co. v. Aetna Casualty & Surety Co.*, 60 N.Y.2d 390, 469 N.Y.S.2d 655, 658, 457 N.E.2d 761 (1983)). It is also well established that any ambiguities are to be interpreted in favor of the insured. "The rationale is that if the policy language is unclear and can reasonably be interpreted in a way that affords as well as excludes coverage, the ambiguity should be resolved against the insurer, the draftsman of the language." *Moshiko, Inc. v. Seiger & Smith, Inc.*, 137 A.D.2d 170, 175, 529 N.Y.S.2d 284, 288 (1st Dep't 1988).

This is especially true when construing exclusionary clauses. As the Second Circuit has held, "[a]ny ambiguity is to be construed against the insurer, particularly when the ambiguity is in an exclusionary clause." *Stoney Run Co.*, 47 F.3d at 37. In order "to negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." *Westview Assocs. v. Guaranty Nat'l Ins. Co.*, 740 N.E.2d 220, 223, 95 N.Y.2d 334, 340, 717 N.Y.S.2d 75, 78 (N.Y.2000) (quoting *Continental Cas. Co. v. Rapid–American Corp.*, 80 N.Y.2d 640, 652, 593 N.Y.S.2d 966, 609 N.E.2d 506 (1993)).

A court may not, however, find ambiguity in an insurance policy provision where none exists. "Where the provisions

of an insurance contract are clear and unambiguous, the courts should not strain to superimpose an unnatural or unreasonable construction." *Maurice Goldman & Sons, Inc. v. Hanover Insurance Company,* 80 N.Y.2d 986, 987, 607 N.E.2d 792, 793, 592 N.Y.S.2d 645, 646 (1992).

 In interpreting an insurance policy, the policy must be read as a whole. *Tozzi v. Long Island Railroad Company,* 170 Misc.2d 606, 614, 651 N.Y.S.2d 270 (N.Y.Sup.Ct.1996) (stating "[a]n insurance policy must be read as a whole with effect given to every provision."). In certain insurance policies, the Second Circuit has found that an exclusionary clause may be ambiguous in one context, but not ambiguous in another context. *Stoney Run Co. v. Prudential–LMI Commercial Insurance Company,* 47 F.3d 34, 37 (2d Cir.1995).

The courts have come to different conclusions when interpreting clauses similar to the one at issue. While the cases may seem inconsistent, the different holdings may be explained by the different structure and wording of the specific policies.

A recent New York Supreme Court decision, after noting that it was dealing with a question of first impression in the State, held that the definition of "vandalism" includes arson. In *MDW Enterprises, Inc. v. CNA Insurance Co.,* June 17, 2002, N.Y.L.J. 21 (Sup.Ct. Suffolk Court.), the court was dealing with a vandalism exclusion which was similar to the one found in the Policy. The court stated, "[u]nless otherwise defined by the policy, words and phrases are to be understood in their plain, ordinary, a popular understood sense". *Id.* at 3. Referring to Webster's New World Dictionary, Second College Edition, 1978, the court found that "vandalism" was defined as "the actions or attitudes of vandals or of a vandal; malicious or ignorant destruction of public or

private property" and "arson" as, "the crime of purposely setting fire to another's building or property, or to one's own, as to collect insurance." *Id.* The court added that "[a]rson under a broadened common law definition includes the willful and malicious burning or attempt to burn any building, structure or property of another or of one's own". *Id.* at 4 (quoting *Brinker v. Guiffrida,* 629 F.Supp. 130, 135 (E.D.Pa.1985)). Finding that arson was therefore a type of vandalism and that the language "as applied the within policy" was unambiguous, the court granted summary judgment in favor of the insurer. *Id.* at 3, 4.

Other cases have found for the insured based on an ambiguity created by the policy. For example, in *Howze v. Nationwide Mutual Fire Ins. Co.,* Slip Op. Index No. 01/5586 (Sup.Ct. Erie County January 23, 2002), the court stated that, "[c]ertainly by definition, arson is an act of vandalism. Under the policy, fire and vandalism are treated differently, however." The court added that "[i]n common speech vandalism and arson are separate, distinct activities. If the insurer wanted to exclude coverage for arson it should have said so clearly." [3] *Id.* at 2.

Similarly, in *Nationwide Mut. Fire Ins. Co. v. Nationwide Furniture, Inc.,* 932 F.Supp. 655, 657 (E.D.Pa.1996) the court, applying Pennsylvania law stated that:

> While Nationwide Insurance argues that vandalism includes intentional acts of an incendiary nature, it is not clear from the policy that this undefined term can be read so broadly. Because fire and vandalism are listed in the policy as separate causes of loss, we conclude that at best the word vandalism is ambiguous. It must be construed against the insurer so as not to encompass damage involving a fire. In other words, we interpret the policy to provide coverage

---

**3.** This decision was later vacated after the parties reached a settlement.

when fire damages a vacant building even though vandals may have set the blaze.

Defendant puts much weight on the recent case of *Costabile v. Metropolitan Property and Casualty Insurance Company*, 193 F.Supp.2d. 465 (D.Conn.2002). In *Costabile*, which was decided under Connecticut law, the court acknowledged that courts have come to different interpretations on the vandalism exclusion, depending on whether the policy was an "all-risk" or "named perils" policy. The court found that the policy in that case was a hybrid and therefore felt that the case was one of first impression under Connecticut law.

The policy in *Costabile* contained "separate and distinct" coverages for different types of property. *Id.* at 474. For example, Coverage C applied only to personal property and was in the form of "named perils" coverage. The court found coverage as to the personal property because the policy was ambiguous as to whether "vandalism" included "fire". In so holding, the court noted that "fire" and "vandalism" were listed as separate causes of loss in the relevant section. *Id.* at 476.

In regards to the other sections of the policy, which were "all-risk" polices, the court found that "fire" was not subsumed by "vandalism", because the "policy contains a specific and unambiguous provision that could, if the facts permit, expressly exclude the plaintiffs' loss." *Id.* at 477. The court felt that any ambiguity created in Coverage C did not pervade the other sections in part because of the different forms of coverage.

In holding that the term "vandalism" was only ambiguous in relation to Coverage C, the *Costabile* court stated, "Unlike Coverages A and B, however, Coverage C

(personal property) is not subject to the vandalism or malicious mischief exclusion set forth in the first section of 'Section I— Losses We Do Not Cover.' Thus, in the policy at issue here, damage to the dwelling or private structures and damage to personal property are separate and distinct types of coverage contained in a single policy." *Id.* at 474.

In defining "vandalism" for the purposes of Coverages A and B, the court relied on the definition of "vandalism" and "arson" found in Webster's dictionary, along with the fact that the criminal cases in Connecticut had included arson as an act of vandalism. The court therefore held, "where, as here, a **policy section** provides all-risk coverage and **does not list fire and vandalism as separate causes of loss**, no ambiguity arises and arson does indeed fall within the definition of vandalism." *Id.* at 478. (emphasis added).

### 2. Analysis

 Reading the policy as a whole and guided by cases cited above, the Court believes that the Policy is ambiguous as to whether "Vandalism" includes arson. The fact that the Outdoor Property Section lists "Fire" and "Vandalism" as separate "Covered Causes of Loss" creates uncertainty as to which "Covered Cause of Loss" covers arson "Fire" or "Vandalism." Since "Fire" is listed as a "Covered Cause of Loss" and is not excluded in the Vacancy Exclusion, the Policy can reasonably be read to provide coverage for "Fire."

As the drafter of the Policy, Defendant could have clearly excluded coverage for the fire at issue by defining "Vandalism" in the Policy to include arson, or conversely, to define "Fire" as accidental fires only. Defendant could also have made use of a "total" vacancy exclusion.[4] The Court also

---

4. A "total" vacancy exclusion is used by insurers to preclude coverage for any damage

caused while the property is "vacant".

notes that the other excluded "Covered Causes of Loss" in the Vacancy Exclusion relate to less catastrophic losses, such as theft and attempted theft. The entire destruction of the building by fire does not seem to be consistent with the rest of the listed bases for exclusion.

Furthermore, while the court in *Costabile* felt that the ambiguity was only present regarding the "named perils" coverage relating to personal property, the structure of the Policy in the instant case provides no basis for limiting the ambiguity to only one type of coverage.[5] The listing of both "Fire" and "Vandalism" as "Covered Causes of Loss" and "Specified Causes of Loss" is found throughout the Policy and creates ambiguity in the entire Policy. There is no reason to differentiate the separate listing of "Fire" and "Vandalism" as "Covered Causes of Loss" under the Outdoor Property Section (on pg. 3 of the Policy) from "Covered Causes of Loss" found in the Vacancy Exclusion (on pg. 11 of the Policy). While there may be a basis to find an exclusion ambiguous in a "named perils" coverage and not in an "all-risk" coverage, where the two coverages are not clearly distinct and the same defined term is used in both, the Court believes this can and does create an ambiguity throughout the policy.

Moreover, the language in the Vacancy Exclusion that the, "Company will not pay for any loss or damage caused by any of the following, *even if they are Covered Causes of Loss*" is ambiguous. It could be read, as Defendant argues, to the interpretation that arson is excluded because it is an act of "Vandalism", notwithstanding the fact that "Fire" is also a "Covered Cause of Loss". However, reading the Policy as a whole, it could also be read to mean that the enumerated bases for exclusion are excluded notwithstanding the fact that "they are Covered Causes of Loss" as they are enumerated in the Outdoor Property Section.

Accordingly, the Court finds that under the Policy, the question of whether "Vandalism" includes an arson is ambiguous and must be construed in favor of the Plaintiffs. Therefore, Plaintiffs Motion as GRANTED as to this issue.

## C. Breach of Covenant of Good Faith and Breach of Fiduciary Duty

 Plaintiffs' claims for breach of the covenant of good faith and fair dealing and breach of fiduciary duty are dismissed because they are neither recognized claims or supported by the facts. Both of these claims are based on Defendant's alleged breach of duties arising out of its contractual relationship with Plaintiffs and assert tort claims for the bad faith breach of an insurance contract. Under New York law, no independent tort claim exists for the bad faith denial of insurance coverage. *Wiener v. Unumprovident Corp.*, 202 F.Supp.2d 116, 123 (S.D.N.Y.2002).[6] Moreover, there is absolutely no evidence that Defendant acted in bad faith in this case. The interpretation of the vandalism exclusion has not been clearly established by the New York courts and this Court finds only that the Policy was ambiguous

---

5. While the parties disagree on whether the Policy provides only "all-risk" coverage or is a hybrid of "all-risk" and "named perils" coverage, the Court does not find that distinction critical in this case because, unlike *Costabile*, there are not clearly distinct coverages. Any ambiguity in the Policy can not be limited to one type of coverage since the term "Coverage Cause of Loss" is used throughout the

Policy and, as stated in Section A of the Policy, applies to the entire Policy.

6. Michigan law is in accord. *See International Harvester Credit Corp. v. Wilkie*, 695 F.2d 231, 234 (6th Cir.1982) (noting that under Michigan law even a bad-faith breach of an insurance contract does not create an independent and separable tort action.)

as to whether the vandalism exclusion includes arson fires. Accordingly, Defendant's motion for summary judgment on the breach of good faith and breach of fiduciary duty is GRANTED.

## CONCLUSION

The Court finds that the Policy is ambiguous as to whether the vandalism exclusion in the Policy includes arson fires. Accordingly, the Court finds that the exclusion is not a basis for denial of coverage. Plaintiffs' Motion for summary judgment on this issue is therefore GRANTED and Defendant's Motion for summary judgment on this issue is DENIED. Defendant's Motion for summary judgment on the remaining claims is GRANTED. Since the Defendant has raised other affirmative defenses regarding coverage under the Policy, the Clerk of the Court shall not close the case.

SO ORDERED.